J. N. WHITNER AND OTHERS, *Appellants*, v. F. L. WOOD-RUFF AND OTHERS, *Appellees*.

## Opinion Filed December 9, 1914.

1. When a vote of the people for issuance of bonds has authorized the pavement of a certain street in a municipality at public expense, the County Commissioners have no authority to substitute another street to be so paved.

2. When bonds have been voted for paving with brick streets and roads of specified width, the County Commissioners should not attempt to materially lessen those widths, because the amount voted was not sufficient to carry out the scheme as voted.

3. Taxpaying citizens may enjoin a further unauthorized expenditure of the public funds.

4. Abutting owners upon a street, which their votes have authorized to be paved at public expense, may enjoin the substitution of another street to be so paved.

Appeal from the Circuit Court for Seminole County; Jas. W. Perkins, Judge.

Order reversed.

*Landis & Fish,* for Appellants;

*Geo. A. DeCottes* and *Fred T. Myers,* for Appellees.

30—Vol. 68

COCKRELL, J.—This is an appeal from an order modifying a restraining order theretofore granted.

The bill was filed by J. N. Whitner and other resident tax payers against the County Commissioners of Seminole County, the Trustees of the Special Road and Bridge District and the contractors for the building of certain roads with vitrified brick, to prevent certain changes in the routes as authorized by the vote of the people and also in narrowing the widths of certain roads to be so built.    Bonds had been voted for the construction of these roads, and had been awarded to the respective contractors, but had not been all delivered.

One of the roads authorized to be paved is described in the proposal submitted to the voters and ratified as "Sanford and Orlando Road, eight miles to be constructed of vitrified brick for a width of 14 feet within the city limits of Sanford, and 9 feet from said city limits to Soldier Creek."    It would seem that this description applied within the city limits to Sanford Avenue, a direct continuation of the Sanford and Orlando Road, but in response to a petition numerously signed and a resolution of the City Council, the County Commissioners fixed the route upon entering the city limits, so as then to go west on Hughey Avenue to Park Avenue and thence north on Park Avenue, thus paving at the public expense Park Avenue, and leaving Sanford Avenue, upon which is the property of the complainants, without pavement, and thereby tending to divert the traffic from passing their property.

The Chancellor approved this action of the Commissioners upon the theory as expressed in his decree that they had "the right to vary the route of the road within the city limits from the route as designated and described

in said original petition as the Sanford and Orlando Road within the city limits, provided the County Commissioners adhere to some direct route leading to the same objective point." From this language we understand the holding to be that the County Commissioners may change the proposed route within a municipality after a different location has been submitted to popular vote as the one to be paved. To this we cannot give our assent. While the citizens might, if requested, have such confidence in their officials as to give them power in general terms, yet when the request is for specific limited power, those officials must keep within its limitations. If the County Commissioners obtain the consent of the people by a vote, to pave at public expense, a designated road or street, those owning property fronting upon that road or street may justly complain, if the officials undertake to pave not that street, but another parallel street three blocks distant.

It is common knowledge that streets in towns are often better known by the places to which they lead than by the official name, and it is evident that what was understood as the Sanford and Orlando Road within the City of Sanford, was that portion of it platted as Sanford Avenue.

Again, the court erred in permitting the County Commissioners within their discretion to narrow the width of the roads, so long as it be done reasonably, proportionately and uniformly, and that they expend all the funds and use all the material belonging to this special fund, and to reduce the width of certain roads to such an extent as to permit the construction of the total mileage originally authorized. One vice in this order is its uncertainty. The changes actually attempted to be made, and for which contracts had been let, were not uniform,

and what may constitute uniformity, proportion and reasonableness, commits again too much discretion to the officials whose powers are granted and hedged in by a specific vote, a specific contract, as it were, with those in whom the legislature have confided the ultimate right. The whole difficulty in this case, arises out of the primary mistake made in attempting to award contracts, when it had been ascertained that the funds voted were not sufficient to carry out the scheme. The County Commissioners are authorized, in these matters, to make contracts, only when the contract price does not exceed the amount voted for at the special election. The people voted two hundred thousand dollars for the building of certain roads of specified widths. The Commissioners before a bond was issued, ascertained that the project as voted would cost over that sum by about twenty-five thousand dollars, if the contracts then proffered them were accepted. It became then their duty either to call for new bids, to decline to award the contract or to ask again for further power, or for more money. An agent authorized to build a road sixteen feet wide, if he can do so for a certain sum of money, may not use that money to build a road twelve or nine feet wide. This variance is not a mere administrative detail, that inferentially or impliedly is committed to the discretion of the agent, but a serious matter of substance and an act beyond the limits of the power conferred.

Whether as tax payers seeking to prevent the further unauthorized expenditure of money or as abutting owners peculiarly interested in the diversion of the proposed route, the complainants have a standing in a court of equity.

It follows that the modification of the restraining

order was improper and the order appealed from is reversed.

SHACKLEFORD, C. J., AND TAYLOR, HOCKER AND WHITFIELD, J. J., concur.