## Elijah H. Marteeny et al., Appellants, v. J. Warner Louth, Commissioner, et al., Appellees.

1. TOWNSHIP ORGANIZATION, § 39*—*when purchasers of bonds necessary parties to action to have bonds declared invalid.* In a taxpayers' suit against the commissioner of highways seeking, in connection with other relief, to have bonds—issued and sold in accordance with the outcome of an election—declared invalid, such question of the validity of the bonds cannot be considered where the purchasers of them have not been made parties to the action.

2. INJUNCTION, § 99*—*when work under contract by highway commissioner for construction of roads perpetually enjoined.* Where a commissioner of highways has let a contract for the construction of roads in violation of the statute, a court of equity will at the suit of a taxpayer declare such contract void and perpetually enjoin work thereunder.

3. TOWNSHIP ORGANIZATION, § 33*—*when township liable for work done under void contract.* Where, in a taxpayers' suit against a commissioner of highways, a temporary injunction is filed, of which the commissioner has notice, restraining him from paying out moneys and doing construction work under a certain void contract but he nevertheless proceeds with the work until the filing of the injunction bond and service of the writ upon him, payment is properly ordered for the work·so done, it appearing that the town has the benefit of it, and that in doing the work the highway commissioner was not actuated by any fraudulent purpose, but that he believed he was acting within the law and that he was attempting to procure the work to be done as economically as possible.

4. EQUITY, § 1*—*when discretionary power of officers not disturbed.* A court of chancery will not take upon itself the control of the discretionary powers of a municipal or *quasi* municipal officer.

5. TOWNSHIP ORGANIZATION, § 28*—*when highway commissioner has no discretion as to use of materials for highway improvements.* Where, in accordance with the provisions of section 112, ch. 121, Hurd's Rev. St., the petitioners by their petition and the voters by their votes designate specifically the amount of funds to be 'raised for highway improvements and the specific highways to be improved out of such fund, it does not rest in the discretion of the highway commissioner as to what materials he may employ within the terms of the statute, but he must employ such material as will,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

with the funds available, enable him to substantially complete the entire portions of the highways designated in the petition.

Appeal from the Circuit Court of Jefferson county; the Hon. E. E. Newlin, Judge, presiding. Heard in this court at the March term, 1915. Reversed and remanded. Opinion filed December 1, 1915.

Robert M. Farthing, for appellants.

Joel F. Watson, George L. Ore and Conrad Schul, for appellees.

Mr. Justice Boggs delivered the opinion of the court.

On the 21st day of March, 1914, there was filed with the town clerk of the Town of Mt. Vernon, Jefferson county, Illinois, a petition signed by the commissioners of highways of said town in their official capacity, and also by 172 freeholders of said town, requesting that the town clerk, when giving notice of time and place of holding the annual town meeting for the year 1914, also give notice ''that a vote would be taken on the proposition for borrowing $40,000 to construct gravel, rock, macadam, concrete or other hard roads, in said town, to the extent, in the places and for the distances, as follows:

''Shawneetown road, from the city limits of the City of Mt. Vernon to the south boundary line of the town, a distance of one-quarter of a mile, more or less;

''Tenth street road, from the city limits of the City of Mt. Vernon to the south boundary line of the town, a distance of one-quarter of a mile, more or less;

''Brownsville road, from the city limits of the City of Mt. Vernon to the south boundary line of the town, a distance of one-quarter of a mile, more or less;

''Ashley road, from the city limits of the City of Mt. Vernon to the west boundary line of the town, a distance of one-quarter of a mile, more or less;

''Richview road, from the city limits of the City of

Mt. Vernon to the west boundary line of the town, a distance of one-quarter of a mile, more or less;

"Centralia road, from the city limits of the City of Mt. Vernon to the west boundary line of the town, a distance of one mile, more or less;

"Perkins avenue road, from the city limits of the city of Mt. Vernon eastward, a distance of two miles, more or less;

"Fairfield road, from the city limits of the City of Mt. Vernon eastward for a distance of two miles, more or less;

"Toll Mill road, from the city limits of the City of Mt. Vernon northward for a distance of two miles, more or less;

"Salem road, from the city limits of the said City of Mt. Vernon northward for a distance of two miles, more or less."

The aggregate mileage mentioned in the petition is approximately ten miles.

The proposition carried, and the bonds were subsequently issued, sold, and the proceeds came into the hands of the appellee, E. Delbert Wilkerson, supervisor and *ex officio* treasurer of the road and bridge fund of said town. The town having previously adopted the single highway commissioner system, appellee J. Warner Louth was elected highway commissioner at said annual town election, and appellee Tony C. Pitchford was and is the county superintendent of highways of Jefferson county.

The highway commissioner with the approval of the county superintendent of highways advertised the letting of the contract for the construction of concrete roads ten feet in width, with a four foot macadam shoulder on each side.

The contract was let to G. Kirk Carver, appellee, at $25 over and above the cost price of the road, and $3 per diem for his services while employed in such construction. The evidence tends to show that Carver

was a "dummy contractor" and that the whole plan was an effort to go around the provisions of the statute requiring the contract for the construction of the work to be let to the lowest bidder; and to permit the highway commissioner to construct the roads by purchasing material and employing the labor himself. The evidence further tends to show that the cost of the concrete roads, such as contemplated by the contractor, Carver, would be from $8,000 to $11,000 per mile, and that macadam or gravel roads can be built at a cost from $3,500 to $4,500 per mile.

On the 25th of August, 1914, appellants filed a bill setting up the above facts and averring that the bond issue was illegal and praying for an injunction against the further construction of the concrete roads, and also praying that in the event that the court should find the bond issue legal that a mandatory injunction be issued compelling the highway commissioner to let the contract and construct said hard roads to the extent, in the places and for the distances described in said petition, of rock or macadam or other suitable material, of such width and thickness as may be built at a cost not to exceed $4,000 per mile. A temporary injunction was ordered issued on September 5, 1914, upon filing bond, which bond was not filed until the 12th of September. Prior to the filing of the bond and the issuing of the injunction writ, 1,320 lineal feet of road had been built, except the macadam shoulders, and there had been paid out on said work the sum of $3,855.18.

The cause came on for hearing on the 12th day of October, 1914, at a regular term of court upon the bill, motion to dissolve the injunction, answers, replications and the evidence, and the trial court found on the hearing that the bonds were legally issued; that the contract let to Carver by the highway commissioner was void for the reason that the statute as to public notice, etc., had not been followed, and "that the said J. Warner Louth, as such commissioner, had a legal right to

construct said highways according to his discretion out of any of the materials mentioned in the said petition.'' On this finding the court entered an order decreeing that appellee J. Warner Louth, as such highway commissioner, with the approval of the county superintendent of highways, proceed to let the contract publicly, as provided by statute, to build the said hard roads to the extent that the said sum of $40,000 will build out of such materials as said commissioner of highways, with the approval of said county superintendent of highways shall select, ''namely, out of gravel, rock, macadam or concrete,'' being the materials mentioned in said petition.

The court further ordered that the work already constructed should be paid for out of the proceeds derived from the sale of said bonds, except as to certain work and teams furnished by said Louth to said Carver; that the amount that would be owing to Louth should not be allowed, and that any funds paid to Louth should be repaid to the treasurer. The temporary injunction was made perpetual in so far as it enjoined the highway commissioner and said contractor from proceeding under said contract which the court held to be illegal.

The examination of the errors raises the following questions: First, was the election and the bonds issued in pursuance thereof valid? Second, did the court err in finding the contract made by the highway commissioner with the man Carver void, and, if void, did the court err in ordering the payment for the work done and the materials furnished on the road, so far as constructed, paid out of the proceeds of said bond issue? Third, did the trial court err in refusing to enjoin the commissioner of highways and the superintendent of highways from adopting specifications for the construction of said road, when said specifications contemplated materials and work, the cost of which would exhaust the funds voted by the citizens and tax-

payers before more than half of said work specified in said petition had been completed?

The election was held under provisions of section 112, chapter 121 of Hurd's Revised Statutes, which act provides for the holding of said election upon petition of the commissioner of highways in their official capacity and of 100 freeholders in any town or district, and so far as the record shows in this case the election was regular. The people voted for the making of the loan and the bonds were legally issued, and, we think, are valid and binding. Even if not valid, the question cannot be raised here for the reason that the bonds have been sold and the bondholders have not been made parties to this proceeding. The court would not undertake to declare the bonds invalid without giving the bondholders an opportunity to be heard.

On the second proposition we do not think it is seriously contended on the part of appellee that the commissioner of highways even seriously attempted to follow the provisions of the statute in the letting of the contract. The most that was contended by appellee is that the commissioner was attempting to procure the construction of the work in the most economical way, but not that he had complied with the provisions of the statute as to the letting of the contract, and, we think the court ruled correctly when it found the contract made between Louth, the commissioner of highways, and Carver, the contractor, was illegal, and the court was also correct in perpetually enjoining the construction of said work under said contract.

A more serious question arises on the proposition as to whether or not payment for the work done and materials furnished under this void contract should be paid for out of the funds derived from the sale of the bonds, not including work or materials furnished by Louth, the highway commissioner. It is urged as a special reason by the appellants why said payment should not be made, that a large part

of this work was done after the trial court had entered
an order for temporary injunction and before the bond
was filed. In other words, that the highway com-
missioner had notice of the order for said injunction,
and that notwithstanding this notice, he proceeded with
the work up until the bond was filed and he was served
with a writ. We are not prepared, however, to say
that the trial court was not warranted in ordering this
work and materials paid for out of said funds, inasmuch
as the town has the benefits of said work, and there is
nothing to show that in doing this work the highway
commissioner was actuated by any fraudulent purpose,
but that he believed he was acting within the law and
that he was attempting to procure the work to be done
as economically as possible. We, therefore, are of the
opinion that that part of the decree should not be dis-
turbed.

The bill for injunction in this case prayed not only
that the commissioner of highways and the superin-
tendent of highways be enjoined from constructing con-
crete roads, but that a mandatory injunction be issued,
directing that ''the commissioner of highways and the
county superintendent of highways be commanded to
proceed to construct the said hard roads to the extent,
in the places and for the distances described in said
petition, of rock or macadam, or other suitable material,
of such width and thickness as may be built at a cost of
not to exceed $4,000 per mile.''

If the prayer of this petition contemplates that a
court of chancery shall take upon itself the control of
the discretionary powers of a municipal or *quasi* munic-
ipal officer, the answer is, that the law is too well
settled that this cannot be done, to admit of serious
controversy. *Brush v. City of Carbondale,* 78 Ill. 74;
*City of Mt. Carmel v. Shaw,* 155 Ill. 37; *Canal Commis-
sioners v. Village of East Peoria,* 179 Ill. 214; *Town of
Lemont v. Singer & Talcott Stone Co.,* 98 Ill. 99; High
on Injunctions, vol. 2, sec. 1311.

As we view this case, this is not the question that is really presented to the court to be determined, but the real question is, did the legal voters who voted at the election held in pursuance of the petition filed with the town clerk of the Town of Mt. Vernon, in which a specific amount of $40,000 was voted to be borrowed to construct gravel, rock, macadam, concrete or other hard roads, in said town to the extent, in the places and for the distances specified, limit the discretion of the highway commissioner and the county superintendent of highways in the amount that they should expend in the construction of said work? Did the legal voters by their vote limit the commissioner of highways and the county superintendent to the expenditure of so much per mile for the construction of the work petitioned for, that the amount voted would substantially complete the entire work specified in the petition? If they did, then a court of equity would have the right to see that limitation made by the legal voters should be enforced. No serious question could be raised in this case as to the discretionary powers of the commissioner of highways in the construction of these roads and as to the materials to be used, were it not for the fact that the petition specifically designated each particular road to be improved and the length of the improvement. The evidence in the record is that the concrete roads with macadam shoulders, being constructed by the commissioner of highways, will cost from $8,000 to $11,000 per mile, so that not to exceed five miles of the road specified in the petition can be completed out of the funds voted. We understand the attitude of the commissioner, as set forth in the evidence, to be that it is a matter entirely in his discretion as to the materials he shall use and also as to the roads which he shall improve, so that if left unrestrained, the probability is that only about one-half of the roads specified would be improved and no work whatever would be done on the others. If that situation is to follow, it would

work a fraud on the petitioners and voters who voted these improvements, and who are taxed to pay for the same, and a large proportion of them would receive practically no benefit from the expenditure of said money. We do not believe that this arbitrary power claimed by the commissioner of highways in the case at bar was ever contemplated by the statute.

In the case of *People v. Kankakee & S. R. Co.*, 248 Ill. at page 117, the court says: "The statute authorizes a vote for or against levying a tax for the purpose of construction and maintaining gravel, rock, macadam or other hard roads. The petition was for a vote upon the proposition to levy a tax to be used in constructing macadamized roads. The notice and election were for levying a tax for the purpose of constructing and maintaining gravel, rock, macadam or other roads, and the levy is for the purpose of constructing and maintaining gravel, rock, macadam or other hard roads. The statute authorizes a vote upon the question of levying a tax for hard roads upon a petition. The petitioners have the right to determine the kind of road they want voted upon,—whether gravel, rock, macadam or other hard road. They may, if they see fit, petition for a vote upon levying a tax for gravel, rock, macadam or other hard road, leaving the character of the road to be determined by the highway commissioners, but if the petition is for a vote upon a particular kind of hard road the vote must be had upon that proposition and cannot be extended to other kinds of road."

In the case of *People v. Cleveland C., C. & St. L. Ry. Co.*, 266 Ill. at page 101, the court says: "Where the petition is for a vote upon a particular kind of hard road the vote must be had upon that proposition and cannot be extended to other kinds of road. The notice and ballot should follow and agree with the petition." Citing and approving, *People v. Kankakee and S. R. Co.*, 248 Ill. 114, and *People v. Cincinnati, I. and W. Ry. Co.*, 261 Ill. 582.

It will be seen, therefore, that the court in these cases recognized that while, if the petition does not specify the character of the material that shall be used in the construction of hard road, the kind of materials to be used shall be left to the commissioner of highways, but if the petition specifies the character of materials to be used it is valid and binding upon the commissioners, and their discretion in that regard is limited.

By analogy, therefore, we hold that the petitioners in this case, by their petition and the voters by their vote, limited the discretion of the commissioner of highways and the county superintendent of highways in the amounts that they should expend in the construction of the highways to such an amount as would allow them to substantially complete the various work specified on the respective roads mentioned in the petition.

We believe that a consideration of section 122 of said Act will throw some light on the construction which should be given to section 112 touching this matter.

Section 122 provides: ''The commissioners and the county superintendent of highways may, in their discretion, cause the road to be constructed wholly of earth, and by a thorough system of tile and other drainage, when gravel, stone and other suitable hard materials cannot be obtained at a cost within the means in the hands of the commissioners.'' It will be observed that the Legislature had in mind in the enactment of section 122 that the commissioners of highways should take into consideration the work they had to do and the funds at their command to be used for that purpose. And, if necessary, when gravel, rock and other suitable hard materials cannot be obtained at a cost within the means in the hands of the commissioners that then they may cause the road to be constructed wholly of earth. We hold, therefore, that the commissioner of highways in the case at bar has so much work to be constructed, and

has certain specified funds to pay for said work, and he must, in exercising his discretionary powers, be limited as to the character of the materials to be used to a certain extent by his limitation of funds. This, we think, is in keeping with the spirit of the statute under which he is acting.

The evidence is that macadam or gravel roads can be built in that community at a cost of from $3,500 to $4,500 per mile, and that said macadam or gravel roads constituted a suitable and available material, and this, we think, would also follow from the language of the statute which specifies rock or macadam roads.

Our conclusion, therefore, is that the decree should be affirmed in so far as it holds the bonds in question to be legal and valid, and in so far as it sets aside the contract entered into by the commissioner of highways and the contractor, Carver, and in so far as it perpetually enjoins the same, and should be affirmed in its judgment for costs against appellees, and should be affirmed as to the payment for the work and materials already used in the construction of said work already done, and should be reversed in so far as it holds that the commissioner of highways has unlimited discretion as to the materials which he may use in the construction of the work specified in the petition. A decree should be entered enjoining Louth, commissioner of highways, and Tony C. Pitchford, county superintendent of highways, from specifying materials and work and the letting of any contract, the cost of which, for substantially the entire work petitioned for, cannot be paid out of the funds derived from the bonds in question, and except for that limitation placed on the commissioner of highways and the county superintendent of highways, by said petition and by said election, their discretion to be limited only by the statute.

*Reversed and remanded.*