CARSON *v.* ROAD IMPROVEMENT DISTRICT No. 2.

Opinion delivered November 7, 1921.

HIGHWAYS—ROAD IMPROVEMENT DISTRICT—ALTERATION OF PLANS.
—Where the commissioners of a road improvement district were
required by statute (1 Road Laws 1919, p. 174) to file "its plans,
specifications and estimates" with the county clerk, and the spe-
cifications so filed provided that the engineer should have the
power, with the approval of the board, to alter the plans and
specifications, *held* (1) that the power of the engineer to alter
the plans and specifications was limited to immaterial changes;
(2) that a change of the method of surfacing the road from the
application of a light asphaltic oil with a cover of sand to the
application of a heavier asphaltic oil with a crushed stone binder,
Involving an additional expense of $13,000 in a contract for an
improvement to cost $300,000, was not material.

Appeal from Craighead Chancery Court, Western
District; *Archer Wheatley,* Chancellor; reversed in part.

*Arthur L. Adams,* for appellant.

Act 97, Acts 1919, does not authorize any change in
plans and specifications, nor does the amendatory act
of 1921 (Act 423, Acts 1921) enlarge the power of the
board or the engineer. Sec. 27 of this latter act constitutes
no part of the plans and specifications.

The word "plans" as used, necessarily means "plans
and specifications" and is not limited to the narrower
sense as outlined in 72 N. W. 550 and 18 N. W. 85.

Commissioners have no authority except that ex-
pressly given or necessarily implied by the terms of the
act. 120 Ark. 212; 110 Ark. 417; 94 Ark. 49; 94 Ark. 82.
See also, case note in L. R. A. 1918-B 1004, 1010.

The proposed change is a material variation from the
original plans, both as to the kind of material used and
the expense thereof. 105 Ark. 65. Federal aid author-
ities can not, as a condition of the donation, alter the
plans and specifications, when neither the commissioners
nor the county court can do so.

*Basil Baker* and *Horace Sloan,* for appellee.

In the absence of statutory prohibition against al-
terations in the plans of an improvement district, the dis-

trict possesses authority to make minor changes as a necessary incident to its power to make plans and specifications. 4 McQuillin on Municipal Corp. § 1921; 226 Fed. 372; 55 Ark. 148; 119 Ark. 271; 143 Ark. 297. An even greater change in plans of a district was that involved in 135 Ark. 104, where the court held that the change was not prohibited by statute.

The act creating this district expressly confers the power and authority to make minor changes and modifications of the plans. Paragraphs 24 to 29 inclusive.

The change in plans adds less than 5% to the total cost of the improvement and cannot be regarded as anything but a minor change.

In passing Act 291, Acts 1919, the Legislature expressly ratified the provisions in the plans and specifications for alterations and extra work, etc. Sec. 3 thereof shows that there was no intention to affect any of the proceedings under Act 97, Acts 1919, creating the district. The Legislature has no power to repeal a curative or validating act after third parties have acquired rights relying thereon. 6 R. C. L. p. 361, Sec. 357; 215 U. S. 417; 160 Wis. 659.

If the subsequent act of 1921 (Act 423) be construed as affecting the construction contract by eliminating the provisions for alterations, or of depriving the district of power to pay for the additional costs of construction out of taxes collected, it is unconstitutional. 16 Wall. 314; 105 U. S. 278; 3 Ark. 285; 103 U. S. 358 and other cases cited by appellee. This act is void because in conflict with § 22, art. 5, Constitution.

The power expressly granted to the district to take necessary action to secure federal aid necessarily implies power to make reasonable changes necessary to secure such aid.

If the added costs due to the alteration are paid out of the federal aid funds, a taxpayer of the district, in the absence of a showing of detriment to the improvement, is in no position to object. 5 Alaska 338; 111 U. S. 701.

McCULLOCH, C. J. Appellant was the plaintiff below, and sought to enjoin the commissioners of appellee district from altering the plans and specifications, as approved by the county court, for the construction of the improvement and from proceeding to construct the improvement according to the altered plans and specifications.

The district was created under Act 97 of the session of 1919 (Road Acts 1919, vol. 1, page 174), which provides that, as soon as the board of commissioners "shall have formed its plans and secured an estimate of the cost of the aforesaid improvement, it shall file a copy of its plans and specifications and estimates with the county clerk of Craighead County;" that the plans "shall be accompanied by a map showing in a general way the location of the highway to be constructed," and that, upon the filing of said plans, the clerk shall give notice that all parties interested will be heard on the question of the adoption of the plans. The statute is silent as to the authority of the board of commissioners to alter the plan after approved by the county court.

The commissioners filed the plans, which specified in detail the method of improving the road, and the specifications contained a provision that the engineer should have the power, with the approval of the board, to alter the plans and specifications.

The county court, on hearing the matter, approved the plans and specifications as a whole. These plans and specifications provided a method of surfacing the road with an application of light asphaltic oil and a cover of sand, spread for the purpose of absorbing the surplus oil. Subsequently the plans were changed at the suggestion of the State Highway Commissioner that, in order to secure federal aid, it was necessary to change the specifications with reference to the surfacing, and to provide for a heavier and better material. So the commissioners changed the plans and specifications

to provide for the application of a heavier asphaltic oil and the use of crushed stone as a binder instead of a covering of sand. It appears from the record that this change was necessary in order to conform to the requirements of the United States Bureau of Public Roads before aid from that department could be secured. It is shown by the agreed statement of facts that this change involved an additional cost of about $13,000, the contract for the entire improvement costing approximately $300,000. The road to be improved was 12.27 miles in length with 4.62 miles of laterals, and the surface yardage to be treated aggregated 116,980 square yards. The amount of federal aid expected to be obtained is $25,000. A contract was made by the board of commissioners for the construction of the improvement in accordance with the altered plans and specifications, and the contractor was made a party defendant to this suit.

The case was tried on the pleadings and exhibits and an agreed statement of facts, and the court rendered a final decree dismissing the complaint in so far as it concerned the prayer for an injunction to restrain the commissioners from constructing the improvement in accordance with the altered plans and specifications, but granted an injunction against the commissioners, restraining them from paying the additional cost under the altered plans and specifications out of the funds of the district "derived from present levies of taxes on the assessment of benefits or funds derived from borrowing money." Both parties have appealed.

The fact that the suggestion for a change of plans came from the federal bureau or from the State Highway Commissioner is without controlling force in this controversy. If the board of commissioners was without authority to change the plans, they could not justify their action by showing that it was done at the direction of any other State or Federal agency, or for the laudable purpose of securing Federal aid. The limits of the

authority of the board of commissioners must be tested by the statute. The statute contains no express provision on this subject, but authority is conferred in absolute terms to construct the improvement, and there is a direction that plans and specifications shall be prepared in advance and submitted to the county court for approval.

We need not decide what the powers of the board would be with reference to material changes in the plans, but we think that authority is not wanting for making immaterial changes. It is not conceivable that the lawmakers meant to restrict the powers of the board, after having once adopted plans, in making immaterial changes from time to time. The plans filed with the county court contained an express provision for such changes, and a fair interpretation of the language used shows that only immaterial changes were in contemplation. The case turns, then, on the question whether or not these changes made by the board of commissioners constituted substantial or merely slight and immaterial changes in comparison with the magnitude of the whole work.

We think that the changes were not material, and in reaching this conclusion we are influenced by previous decisions of this court, notably the case of *Hout* v. *Harvey,* 135 Ark. 104, where we held that a change in the construction of a road from a width of 12 feet of gravel 5 inches deep, with a gravel coat of asphalt treatment 1 inch deep, to a road 14 feet wide gravel 7½ inches deep, was not a material change. In that case the original cost was $176,717, and the change involved an increase of $52,231.49 in the cost. The change in the present instance is no more material than that made in the case just cited.

The conclusion thus reached on this issue settles all the questions necessarily involved in the case, for if the change made was an immaterial one, and the commissioners had power to make it, the chancery court was

correct in refusing to restrain the board of commissioners from proceeding under the altered plans and specifications, but erred in restraining the commissioners from paying for the added cost out of the funds of the district derived from borrowing money or from levying assessments. Of course, the Federal aid to be obtained will amount to more than the additional cost, but it is said that, inasmuch as that aid will not be forthcoming until the completion of the improvement, it is a substantial inconvenience for the commissioners not to be allowed to proceed with the use of the district funds in paying for the improvement. We do not see that the question of Federal aid enters into this controversy in any respect, but, if the commissioners had the authority to make the change, it follows necessarily that the court was wrong in restraining them from paying for the improvement out of the funds of the district, provided the total cost of the improvement, including the additional cost arising from the change in the plans, does not exceed the benefits. It is unnecessary to discuss the effect of subsequent statutes undertaking to approve the plans and sepecifications, or amending the original statute.

The decree is affirmed on the appeal of the plaintiff, but on the appeal of the defendants it is reversed, and the cause remanded with directions to dismiss the complaint for want of equity.