[S. F. No. 9968.   In Bank.—July 28, 1922.]

## CATHAL O'FARRELL, Appellant, v. COUNTY OF SONOMA et al., Respondents.

[1] COUNTIES — HIGHWAY CONSTRUCTION — EXPENDITURE OF REVENUE FROM SALE OF BONDS—POWER OF SUPERVISORS.—Where an order of a board of supervisors calling an election for the issuance of bonds for the construction of county highways, specified each piece of road that was to be constructed, the length thereof and the amount to be expended thereon, the board had no authority to con-

struct each road in portions or to expend the whole amount on only a portion of such road, since under section 4088 of the Political Code the revenue derived from the sale of bonds can only be applied to the purpose specified in the order calling the election and no other.

[2] ID. — ORDER FOR BOND ELECTION — RATIFICATION BY ELECTORS — CONTRACT.—An order of a board of supervisors calling an election for incurring a bonded indebtedness for highway construction and the ratification of such order by the electors constitutes a contract between the state and the individuals whose property is thereby affected, and it cannot be altered by one of the parties thereto.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge. Reversed.

The facts are stated in the opinion of the court.

J. W. McCaughey and Vincent Surr for Appellant.

Geo. W. Hoyle for Respondents.

J. A. Barham, *Amicus Curiae*.

THE COURT.—The plaintiff commenced an action against the defendants to obtain an injunction regarding the making of unlawful contracts and the unlawful expenditure of the proceeds of certain county bonds. The defendants appeared and filed a general demurrer. The demurrer was sustained. The plaintiff declined to amend and judgment was entered in favor of the defendants for their costs. The plaintiff has appealed from the judgment.

In his verified complaint the plaintiff incorporates copies of certain records, and in the interest of simplicity, in stating the substance of the allegations we will make no distinction as to the plaintiff's allegations and the facts contained in the exhibits. In this manner we may state that the plaintiff alleges that he is the owner of property taxed and subject to be taxed to pay the bonds hereinafter referred to; that the individuals named as defendants are the supervisors of Sonoma county; that on the sixteenth day of April, 1919, the Board of Supervisors of Sonoma County adopted a resolution and order:

"Whereas, public necessity and convenience demand the building and construction of certain highways in Sonoma County; and

"Whereas, there are no funds of the County of Sonoma available for said purpose; and

"Whereas, it is necessary that a bonded indebtedness for the said purpose be incurred and created by the said County of Sonoma;

"Now, therefore, be it resolved and ordered by the Board of Supervisors of the County of Sonoma, at a regular meeting of the said Board of Supervisors held in the County of Sonoma, on the 16th day of April, 1919, all of the members of said Board being present at such meeting and voting thereat in favor of this order, that the question of the issuance of bonds for the incurring of an indebtedness of One Million Six Hundred and forty thousand dollars for the purpose of building and constructing highways in said Sonoma County, be submitted to the qualified electors of the County of Sonoma, State of California, at a special election to be held throughout Sonoma County on the 24th day of May, 1919; the said bonded indebtedness to be incurred for the purpose of building and constructing the highways described as follows:

"Sebastopol to Freestone

"Beginning at a point in the present Sebastopol-Freestone Road, 1.1 mile Westerly from the limits of the Town of Sebastopol; said point at the end of the present oil road; thence along the present road to its intersection with the present Freestone-Valley Ford Road.

"Distance 4.0 miles.                    $85,000.00.''

Then follows certain other formal matters concerning the election and the resolution contains, "Notice of County Bond Election.   Notice is hereby given, etc. . . . The said bonded indebtedness is to be incurred for the purpose of building and constructing the following described highways in Sonoma County, to wit: Sebastopol to Freestone"; then follows the description, the distance, and the *pro rata* amount for the above road and the similar data regarding other roads. That the election was duly held on the twenty-fourth day of May, 1919; that on May 28, 1919, the returns all being in and the same being canvassed, the defendant board declared the proposition carried, and ordered the issuance of said bonds; that on the eleventh day of June, 1919, the defendant board ordered the publication of notice of sale of said bonds; that thereafter said bonds were sold for the amount of

principal and accrued interest, and a premium of $39,500. That on the sixth day of August, 1919, the county engineer and surveyor was directed to make plans and specifications for the said road from Sebastopol to Freestone; "that thereafter said county surveyor prepared, and on March 23d, 1921, filed with said county clerk plans, specifications and estimates of a portion only of said Sebastopol-Freestone four-mile road showing said portion as Section A, being of the length of 10,208 feet, to-wit, 1.93 miles, and calling for an estimated expenditure thereon of $81,500, but did not and has not filed any plans, specifications, or estimates whatever of, or for, the remaining 2.07 miles of said Sebastopol-Freestone four-mile road. . . . That the fact is that in said road from Sebastopol to Freestone there are four hills requiring grading and drainage, and three of said hills are in Section A, and the O'Farrell hill the largest by far of said hills is not in said Section A, cannot possibly be graded and drained with the small amount of money, if any, that will remain applicable thereto after the building and construction of said Section A, if done according to the plans and specifications filed as aforesaid. That on the 23d day of March, 1921, the defendant board adopted the above mentioned plans and specifications and directed the clerk to advertise for bids. That on the 25th day of March, 1921, the clerk did so advertise for bids; that said bids have been received; that the board threatens to and will, unless restrained, open the bids so invited, accept the lowest bid and will enter into a contract with the lowest bidder. That the plaintiff and many others will be irreparably damaged, etc., wherefore plaintiff prays judgment."

The complaint was filed April 11, 1921. Thereafter the plaintiff filed a supplemental complaint in which it is alleged that on the twelfth day of April, 1921, the defendant board opened the bids and that the lowest responsible bid for the construction of Section A, 1.93 miles, was $72,840.60; that the cost of constructing the rest of the road, 2.07 miles, will exceed the cost of constructing Section A.

The statute (Pol. Code, sec. 4088) under which the bonds were issued, among other things, provides: "Any county . . . may incur . . . a bonded indebtedness for . . . the purpose of . . . constructing roads. . . . Such indebtedness shall be . . . incurred in the following manner, to wit: The board

of supervisors thereof shall by order specify the purpose for which the indebtedness is to be incurred. . . . (Then follows itemized procedure regarding issuance of bonds and the levy of a tax.) Such tax, when collected, shall be paid into the treasury of the county, and used solely to pay the interest and principal of said bonds as they respectively become due. The revenue derived from the sale of said bonds shall be applied to the purpose specified in the order of the board, and no other. Should there be any surplus, it shall be applied toward the payment of said bonds. The board of supervisors of any county can contract a bonded indebtedness for county purposes only as in this title provided . . . ''

The plaintiff contends that under the foregoing facts the board of supervisors had the jurisdiction to ask for bids for the construction of the road, Sebastopol to Freestone, as an entity and if the bids were too high that the board was not entitled to proceed without further authority from the electors. The defendants contend that a board of supervisors has discretionary power to spend the entire $85,000 on any part or portion of said road as to the board seems meet and proper.

[1] We think that "discretionary powers" are a false issue in this case. When the defendant board was contemplating a bond issue on the sixteenth day of April, 1919, it had the statutory right to make its order just as broad, and just as narrow, and just as specific as it was willing to be bound by, so long as the provisions of the statute were complied with. At that time it could have asked generally for the consent of the electors to issue bonds in the sum of $1,640,000 for constructing roads in Sonoma County, but it did not do so; on the contrary, it specified road by road, name by name, and length by length, of each piece of road that was to be constructed. When, in the order, it specified Sebastopol to Freestone, four miles, designating the point of beginning and the point of the ending, any question of discretion as to division or subdivision into sections was, as to these elements, exercised once and for all and as a finality. When thereafter, pursuant to that order, the defendant board published a notice to the electors in exact accord with its order, every elector had the right to assume that the statement contained in the order to the effect that

a road would be constructed from Sebastopol to Freestone meant the entire distance between those two points—not one end, or the other end, or any part or portion—but the whole. The electors are presumed to have known the law and to have known that by the provisions of *subdivision 11* of *section 2643* of the *Political Code,* road work, costing more than $1,000, may be done and performed only after notice duly given calling for bids. The electors must have also known that ordinarily a board of supervisors has many discretionary .powers; but, nothing to the contrary appearing, the electors had the right to assume that after the election the board of supervisors would call for bids for the construction of *a road four miles in length between Sebastopol and Freestone* as described in its order and *costing not to exceed $85,000.* [2] The order calling the election and the ratification of that order by the electors constituted a contract between the state and the individuals whose property was thereby affected. (*Peery* v. *City of Los Angeles,* 187 Cal. 753 [19 A. L. R. 1044, 203 Pac. 992].) After the contract had been made it could not be altered by one of the parties, only, but by all of the parties thereto. When by its order, duly accepted by the vote of the electors, the length of the road had been specifically defined, its terminals specifically located, and the cost of the whole established—these elements became a part of the contract. As to them the board, acting alone, could not redivide the contract. Neither could it directly expend the moneys on only a portion of the road. What it could not do directly it could not do indirectly. Such fact is of the utmost importance to the interested parties. It is the only hold the taxpayers have for specifically enforcing the contract as made by them. The very gist of the plaintiff's complaint is that the defendant board has not asked for, and has not obtained, a bid for constructing the whole road. For this reason the plaintiff may complain. If the defendant board has the statutory right to let contracts to build said road in sections, then, as the defendant argues, all of the funds may be spent on one mile in the discretion of the board. But the board may not let the contracts piecemeal. It has waived its right to do so. The foregoing views are fully sustained by the principles announced in *Jenkins* v. *Williams,* 14 Cal. App. 89 [111 Pac. 116]. The only difference between the instant case and

that case is that the instant case involves roads, whereas the Jenkins case involved bridges.   Both cases rest on the same section of the same statute.   No one can read that decision without being impressed that the board of supervisors of Sacramento County could not have used the moneys voted for a "New Steel Bridge over Cosumnes River at Bridgehouse, Sacramento County" for the purpose of building one-half of a bridge, or one pier for a proposed bridge, or anything else or otherwise, except an entity—a bridge, whether large, small or otherwise.   Cases quite closely in point, in other jurisdictions, are in accord with the case last cited. (*Marteeney* v. *Louth*, 197 Ill. App. 106, 115, 116; *Haws* v. *County Court*, 86 W. Va. 650 [104 S. E. 119, 121]; *Whitner* v. *Woodruff*, 68 Fla. 465 [67 South. 110, 111] ; *Pine* v. *Baker*, 76 Okl. 62 [184 Pac. 445, 451] ; *Thompson* v. *Pierce County*, 113 Wash. 237 [193 Pac. 706, 707]; *Carson* v. *Road Improvement Dist. No. 2*, 150 Ark. 379 [234 S. W. 257].)

We think that the demurrer should have been overruled and that the defendants should have been required to answer, and that the case should have been heard on its merits.

The judgment is reversed.

The foregoing opinion heretofore rendered herein by the district court of appeal of the first appellate district, division two, is hereby adopted as the opinion of the court.

Shaw, C. J., Lennon, J., Waste, J., Richards, J., *pro tem.*, and Myers, J., *pro tem.*, concurred. Lawlor, J., and Sloane, J., dissented from decision of case without further consideration.

Rehearing denied.

All the Justices present concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.