[Civ. No. 7627.   Third Dist.   Mar. 28, 1949.]

SACRAMENTO-YOLO PORT DISTRICT et al., Petitioners, v. A. S. RODDA, as Auditor, etc., Respondent.

Downey, Brand, Seymour & Rohwer for Petitioners.

John Quincy Brown, District Attorney, William A. Green, Assistant District Attorney, and John B. Heinrich, Deputy District Attorney, for Respondent.

PEEK, J.—By this proceeding in mandamus, the petitioners, sometimes referred to hereinafter as the district, seek an

order of this court compelling respondent A. S. Rodda, auditor of said district, to certify the correctness of a warrant duly approved by petitioners and drawn in favor of the Treasurer of the United States for the Secretary of the Army in the sum of $1,000. The warrant represents a portion of a total of $500,000 which the petitioners propose to advance to the Secretary of the Army in accordance with a resolution duly adopted by the petitioners' board of directors. According to said resolution the advancement will enable the Army Corps of Engineers to promptly proceed with the work on the portion of the project to be performed by the federal government without the necessity of waiting for a federal appropriation. The Secretary of the Army has authorized the Army Corps of Engineers to accept the advance and has entered into an agreement with the district to reimburse it for such advances from anticipated federal appropriations. The respondent refused to certify the warrant on the ground that said proposed advance constitutes a gift of public moneys in violation of article IV, section 31 of the California Constitution.

The district is a public agency organized under and pursuant to part 6 of division VIII of the Harbors and Navigation Code of this state to cooperate in the construction, development and operation of such project with the United States government, which project has been regularly approved by both the federal (Pub. Law 525, 79th Congress, 2d Sess.) and state governments (Stats. 1947, chaps. 55 and 1152).

The reason for the proposed advance, as stated by the district, is that it cannot proceed with the construction of terminal facilities until the United States commences work for which it alone is responsible, namely, the moving of large quantities of material for embankment purposes; and that the initial federal appropriation in the sum of $250,000 is inadequate to enable the Army Corps of Engineers to properly proceed with such work.

Respondent does not deny the power of the district to "contribute" money to the federal government under section 6900 of the Harbors and Navigation Code, wherein it is specifically provided that,

"It may contribute money to the Federal . . . government . . ., for the purpose of defraying the whole or a portion of the cost and expenses of work and improvement to be performed, . . . or in doing other work, if such work will improve navigation and commerce, in or to the navigable waters in the district."

But he contends (1) that as the word "contribute" means in part to "give," the power so given by said section 6900 violates section 31 of article IV of the state Constitution, which provides in part:

"The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State, or of any county, city or county, city, township or other political corporation or subdivision of the State now existing, or that may be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation."

and (2) that an advance to the United States to assist in carrying out the project is without the authorization contained in the bond proposal approved by the electors at the election held for that purpose.

It is true that the word "contribute" means in part to "give" since the term is defined in Webster's International Dictionary as follows:

"To give or grant in common with others, as to a common stock or for a common purpose; to furnish or supply in part; to give (money or other aid) for a specified object."

However, the question presented is not one which can be determined by application of the precise dictionary definition of the word "contribute," but rather it is one to be resolved in light of the constitutional provision, i. e., if the proposed advancement of public funds constitutes a *gift* of public funds within the meaning of the term as used in said section 31, article IV of the Constitution. In *City of Oakland* v. *Garrison,* 194 Cal. 298, 302 [228 P. 433], where a similar question was presented the court pointed out that "where the question arises as to whether or not a proposed application of public funds is to be deemed a gift within the meaning of that term as used in the constitution, the primary and fundamental subject of inquiry is as to whether the money is to be used for a public or a private purpose." In so stating, the court was following the rule laid down in the earlier case of *Conlin* v. *Board of Supervisors,* 99 Cal. 17 [33 P. 753, 37 Am.St.Rep. 17, 71 L.R.A. 474], which rule has been affirmed repeatedly

in succeeding years. (See *County of Los Angeles* v. *La Fuente,* 20 Cal.2d 870, 877 [129 P.2d 378].)

There can be no doubt that the proposed advancement in question herein is for a public purpose. Particularly is this true in view of the resolution of the district relative to the necessity and purpose of the advancement, the several statutes, both federal and state, in regard to the construction, development and operation of the project, and the overall statement of purpose contained in the bond proposal submitted to the voters of the district. Therefore the conclusion is inescapable that the proposed advance is for a public and not a private purpose and therefore does not violate said constitutional provision.

■ In support of his second contention respondent argues that a voter at the bond election could have gathered the impression that the work was to be done entirely by the district and that the money to be derived from the sale of the bonds was to be expended solely by the district. In so contending respondent seemingly relies upon the general rule that proceeds from the sale of bonds voted for a specific purpose cannot be devoted to another purpose. (*O'Farrell* v. *County of Sonoma,* 189 Cal. 343 [208 P. 117].) Such contention is predicated only upon a portion of the rule and fails to consider the remaining portion thereof which is that public boards may submit bond proposals in general terms, just as broad or just as narrow and specific as it is willing to be bound by, and when the authority, having the power and responsibility of proposing the bond issue, has not confined itself to an absolutely definite and inflexible plan of construction and expenditure by the proposal submitting the bond issue, and has proceeded free from fraud and in good faith in accordance with such broad program, there is no reason why it cannot be permitted to carry on the improvement to the extent of the funds available. (*Sacramento M. U. District* v. *All Parties,* 6 Cal.2d 197 [57 P.2d 507].)

Turning to the proposition submitted by petitioners to the voters of the district we find the following language:

"PROPOSITION: (Port Project.) Shall Sacramento-Yolo Port District incur a bonded indebtedness in the amount of $3,750,-000 for the acquisition, construction and completion of the following improvement, to-wit:

"Sacramento-Yolo River Port Project, including wharves, docks, warehouse, grain elevators, transit sheds, storage facilities, belt railroad, lands, easements and rights-of-way, together

with harbor connecting road-ways, sanitary and storm sewer, electric light, power, water supply and fire protection harbor facilities, and all other works, property, structures, equipment and facilities incident to or necessary for said Sacramento-Yolo Port District?''

While the language of the bond proposal properly may be construed as conferring the power upon the district to expend the funds to carry out the entire project it cannot be said that such language thereby committed the district to complete the entire project by itself any more than such language can be construed to limit the district to the completion of only one phase of the project or to preclude the district from cooperating with any other governmental agency in carrying out the project. In other words the course pursued by the district comes squarely within the broad powers and purposes set forth in the proposal submitted to and approved by the voters of the district, and therefore is governed by the rule expressed in the case last cited (6 Cal.2d 179).

For the foregoing reasons the writ is granted.

Adams, P. J., and Thompson, J., concurred.