76 So.2d 294 (1954)
STATE of Florida and the Taxpayers, Property Owners and Citizens of said City of Miami, including Non-Residents Owning Property or Subject to Taxation Therein, Appellants,
v.
The CITY OF MIAMI, a Municipal Corporation of the State of Florida, Appellee.
Supreme Court of Florida. En Banc.
December 10, 1954.
George A. Brautigam, Miami, for appellants.
J.W. Watson, Jr., Miami, and Mitchell & Pershing, New York City, for appellee.
MATHEWS, Justice.
This case involves a bond validation proceeding in the Circuit Court of Dade County. The purpose of the suit was to determine the validity of the bonds and the legality of the necessary proceedings to issue $6,000,000 of Special Obligation Capital Improvement Bonds (Series A).
It appears that on February 3, 1954, the City granted a franchise to the Florida Power and Light Company for a period of thirty years and provided for the imposition of a franchise tax if the company accepted the franchise. The ordinance granting *295 the franchise and imposing the tax was approved at an election held in the City of Miami on March 30, 1954, and was accepted by the company on March 31, 1954. On July 22, 1954, the City Commission of the City of Miami adopted an ordinance providing for the issuance at any time or times of special obligation bonds of the City payable solely from such franchise payments under the above mentioned franchise for the purpose of paying all or a part of the cost of capital improvements within the City and for the purpose of refunding any bonds issued by the City under the provisions of the ordinance. There were other limitations with reference to the amount of the franchise tax and the amount of bonds which could be issued from time to time not involved in this proceeding. On August 4, 1954, the City Commission adopted resolutions authorizing the issuance of bonds under the provisions of the ordinance for amounts and for purposes set forth in such resolutions.
There were eleven separate resolutions setting forth a particular purpose for which the proceeds would be used and naming the specific amount of bonds to be used for each such purpose. The purposes mentioned in each resolution were beyond question for municipal purposes and the City was authorized to incur bonded indebtedness for such purposes, with the exception of Resolution No. 26627, which provided for $750,000 of the bonds, the proceeds of which were to be used for a building by the City as an International Trade Mart, including the acquisition of any necessary land and the equipment therefor, which is questioned by the State Attorney.
The City also adopted another resolution consolidating the bonds authorized by the various resolutions into a single issue of $6,000,000 and provided for their issuance as a single issue designated Special Obligation Capital Improvement Bonds (Series A), but did not in any manner change the purpose of bonds covered by each separate resolution and the amount of bonds to be used to accomplish the purpose of each separate resolution.
Thereafter a petition to validate the bonds was filed under the provisions of F.S. Chapter 75, F.S.A., claiming that the City proposed to issue the bonds under the authority of Chapter 169, Florida Statutes, F.S.A., and the Charter of the City, Chapter 10847, Special Laws of Florida 1925, as amended and supplemented. The State of Florida, by the State Attorney for the Eleventh Judicial Circuit, filed an answer in which three questions were presented. After hearing before the Circuit Court a decree was entered validating the bonds in question. From this decree the State has appealed and has raised three questions.
The first question concerns the authority of the City to issue the bonds which are payable solely from sums payable to the City by the Florida Power and Light Company under its franchise without submitting the question in a freeholders' election as required by Section 6, Article IX of the State Constitution, F.S.A. This question is not one of first impression in this Court. The identical question has been raised twice in the last few years. In the case of State v. City of Pompano Beach, Fla., 47 So.2d 515, 516, this Court said:
"It is next contended that the revenue certificates are in effect bonds which require an approving vote of the freeholders as specified in Section 6, Article IX of the Constitution, F.S.A., before they may be lawfully issued.
"This contention is likewise devoid of merit. The record and the evidence show that the certificates do not impose a general obligation on the taxing power of the city to service them. They are payable solely from revenues derived from the franchise granted to the Florida Power and Light Company by the City and it is shown that these revenues are more than ample to retire them as they fall due. They are supported by no other pledge and there is not the remotest probability, or basis for pledging the taxing power to service them."
*296 In the later case of State v. Miami Shores Village, Fla., 60 So.2d 541, this Court said:
"* * * The certificates are to be payable solely from the revenues derived by the Village from its utilities franchise.
"* * * It is well settled that such revenue certificates are not `bonds' within the meaning of Section 6 of Article 9 of the Constitution of the State of Florida, F.S.A. State v. City of Miami, 113 Fla. 280, 152 So. 6; State v. City of Pensacola, Fla., 40 So.2d 569; State v. City of Lakeland, Fla., 42 So.2d 580."
The citations given in support of the text in the case of State v. Miami Shores Village, supra, were in error because none of these cases involved a franchise tax. In lieu of the cases cited the case of State v. City of Pompano Beach, supra, should have been cited. However, this error does not affect the text and holding of the opinion that when bonds are to be paid solely from the revenues derived from a franchise tax, such obligations are not bonds within the meaning of Section 6, Article IX of the State Constitution. The last two cited cases; that is, State v. Miami Shores Village, supra, and State v. City of Pompano Beach, supra, have not been receded from or overruled and, therefore, the opinions and holdings in those cases constitute a part of the law of this State.
We, therefore, hold under the authorities above cited that the issuance of the bonds in question, payable solely from the proceeds of the franchise tax in question, does not violate Section 6, Article IX of the State Constitution.
The State Attorney raises as a second question his contention that the City of Miami is not authorized to issue the bonds in question in the manner and for the purposes proposed.
Section 3, subdivision (g), of the City Charter, provides that the City shall have the power:
"To make and maintain, within and without the City, public improvements of all kinds, including municipal and other public buildings, armories, markets and all buildings and structures necessary or appropriate for the use of the City and to acquire by condemnation or otherwise all lands, riparian and other rights and easements necessary for such improvements; and to rent or lease from any person, firm, corporation, or political sub-division, any land or building within or without the City or any space within any such building, for any municipal purpose."
Section 3, subdivision (d), of the City Charter, provides that the City shall have the power:
"Subject to the provisions of the constitution of Florida and of this charter, to contract debts, borrow money and make and issue evidences of indebtedness."
F.S. § 169.01, F.S.A. authorizes the City to borrow money or contract for loans for the use of the City and pledge the funds, credit and property of the corporation for the redemption of such loan, or loans, providing the same does not conflict with Section 6, Article IX of the State Constitution. As we have heretofore held that the issuance of the bonds in question is not prohibited by Section 6 of Article IX, unless approved by freeholders, said F.S. § 169.01, F.S.A. is sufficient authority to issue the bonds in the manner and for the purposes proposed, except the amount of $750,000 for the International Trade Mart, which is specifically questioned by the State Attorney.
It is suggested that there should be a separate issue of bonds for each resolution or for each separate project. There is no merit to this contention. There may be one bond issue to cover several different projects such as in the case of Whitner v. Woodruff, 68 Fla. 465, 67 So. 110. Bonds may have been issued for the purpose of building county roads without specifying the particular roads, however, in that case, in submitting the bond issue, the Board of County Commissioners named specific roads. After the bonds were sold, an attempt *297 was made to change the location of one of the roads and this Court held that it could not be so changed, and that an injunction was proper.
In this case there is one issue of bonds for improvements. The specific improvements and the amount of money allotted to each improvement is set forth in different resolutions and there is one bond issue to accomplish the purposes of the separate resolutions. After the bonds are validated, the purpose set forth in each resolution cannot be changed. To be more specific, the amount set forth for sanitary sewers could not be changed for highway improvements or for parks and recreational facilities although each of these purposes is covered by the one issue of bonds designated Capital Improvement Bonds.
The State Attorney presents as a third question the amount set forth for the International Trade Mart building and claims that such a building does not serve a public and municipal purpose for which bonds may be issued. As shown by the record in this case, mart and market are synonymous terms in that a public mart will serve the same purpose as a public market. Public markets or marts have been erected and maintained by the government as public places to display or sell produce, vegetables, fish, meats and everything else furnished for the sustenance of the population of a city. A market is a public place appointed by public authority where all sorts of things for the sustenance or the convenience of life are sold or supervised and inspected and where domestic animals may be on display. In England it was a prerogative of the sovereign to grant a franchise for a public market. In this country public markets have been maintained and have been extended to city or county fairs where the industrial, commercial, agricultural and other products of the community and other places would be placed in stalls and put on display.
Subdivision (g) of Section 3 of Chapter 10847, Special Laws of Florida 1925, specifically authorizes the City of Miami to make and maintain public improvements including "markets" and all other buildings and structures necessary or appropriate for the use of the City.
The record shows that the market or International Trade Mart will be owned by the City, operated and supervised by the City, and same is specifically authorized by statute. It will serve as a municipal purpose and it is a project or undertaking for which the City may borrow money. Compare State v. Town of North Miami, Fla., 59 So.2d 779.
No reversible error has been made to appear and the decree of the Circuit Court validating the issue of bonds in the sum of $6,000,000 designated Special Obligation Capital Improvement Bonds (Series A) be, and the same is hereby,
Affirmed.
ROBERTS, C.J., and TERRELL, SEBRING, THOMAS and HOBSON, JJ., concur.
DREW, J., dissents.