## PFAU et al. v. WITCOVER et al.

### No. 5150.

Circuit Court of Appeals, Fourth Circuit.

Dec. 27, 1943.

William H. Smith, of Atlanta, Ga. (McLaws, Brennan & Ziegler, of Savannah, Ga., on the brief), for appellants.

Samuel Want, of Darlington, S. C., for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit, based on diverse citizenship, was brought to secure the cancelation of a

deed to a lot of ground and the building thereon in Darlington, South Carolina, and for an accounting for rents and profits. The plaintiff, one of the executors of the estate of H. W. Witcover, deceased, charged that a deed made by the deceased on August 29, 1936, a few weeks before his death, conveying the property to his brother, D. D. Witcover, was executed without consideration as the result of undue influence when the grantor was without sufficient mental capacity to execute a valid contract. The defendants were the grantee, who was also an executor under the will, and another co-executor who refused to join in the complaint but was joined as party defendant and admitted the allegations of the complaint. Subsequently a sister of the deceased was joined as party defendant when the grantee in the deed, which on its face conveyed an absolute title, set up the defense that the deed was in fact made pursuant to a trust agreement under which the property, subject to the encumbrances thereon, was to be held for her benefit.

The grantor died on October 1, 1936 leaving practically all of his property of the approximate value of $70,000 in trust for the benefit of his three children. The property covered by the deed was then rented for much less than $100 per month and was subject to a mortgage so that the value of the interest passing in trust for the sister's benefit, while apparently more than the jurisdictional amount of $3,000, was substantially less than $10,000. No valuable consideration for the conveyance passed to the grantor.

The evidence on which the deed was attacked stressed the enfeebled condition of the grantor at the time of its execution. In 1934, because of loss of health, he had resigned the position of secretary-general of the Supreme Council of the Scottish Rite Masons of the Southern Jurisdiction with an office in Washington. He then went to live with his sister in Darlington, remaining with her and under her care until his death. The sister's husband, and the grantee in the deed, resided in the same house. A married daughter, the eldest of his three children, remained in Washington. Letters written by the sister to the daughter at or about the time of the execution of the deed tended to show that the grantor was then in bad mental and physical condition and unable to leave the house. The

testimony of the defendants indicated that the deed was executed in his brother's place of business at some distance from his residence, and that he walked from his home for the purpose. Upon this evidence the special referee, to whom the case was referred, found that at the time of the execution of the deed the grantor was incapacitated and unable to understand the nature of his act. This conclusion found some support in medical testimony based on hypothetical questions.

The District Judge reached the opposite conclusion upon all the testimony. He found that the grantor had been generous with his family for years. He had made monthly advances to his sisters and had invested considerable sums of money in the business of his brother-in-law. In fact, the grantor arranged with his brother and his brother-in-law to take the title to certain property, including that covered by the deed in suit, out of the brother-in-law's name and to put it in the name of a corporation and later in the name of the grantor in order to save it for his sister, and for this purpose he advanced substantial sums of money. The judge reached the conclusion that the same purpose actuated the transfer of the property in dispute and that the grantee in the deed accepted it with the understanding that he would hold it for his sister's benefit. The grantee and a number of other witnesses testified in detail as to the execution of the deed in the brother's store after the testator had held the deed in his possession for several days. They testified that while he was in bad physical condition, his mind was clear, and he understood what he was about. The judge carefully examined the letters written by the sister to the daughter of the grantor and concluded that they did not show that at all times during the period in question he was incompetent, but that at times his mental capacity was bad and at other times good. Acknowledging that the case was not free from difficulty, the judge was unable to find that the persons who testified as to the execution of the deed were guilty of perjury; and he held that the deed was executed in the manner and for the purpose depicted by the defense. Holding that the gift of a small part of the testator's estate to his sister at the end of his life was a natural benefaction, the judge said:

"There is ample evidence that H. W. Witcover had been accustomed to make con-

siderable gifts to his sister and had assisted in furnishing her support besides endeavoring to save some of her husband's property. If the deed had declared the trust, the motive to contribute to his sister based upon natural family affection, would have been ample consideration to support the deed, and the testimony in this case undoubtedly places it in the class of a conveyance with a trust attached and although the deed does not recite the trust the beneficiary under the state of the present pleadings and testimony is in a position to require D. D. Witcover to carry out the terms of the trust as related by him in the event that he should fail to so carry them out or should fail or refuse to make a declaration and should attempt to use the property for other purposes. I think there is ample evidence to sustain the fact that a trust was intended, provided of course it is found that H. W. Witcover had sufficient mental capacity and was not unduly influenced."

"* * * When he gave up his position as secretary general with the Scottish Rite order he did not continue to live in Washington or make his home with the daughter, nor did he return to his old home in Savannah, Georgia. But instead and entirely of his own volition and presumably led by affection for his sister and brother he went to Darlington and there made his home with Mrs. Lumiansky. He contributed to the upkeep of the household and in view of the fact that he was making no provision in his will for her it would indeed seem rather remarkable that he would make no gift or provision for her future since he had always been so extremely solicitous for her well-being and support in the past. The one piece of property that had been rescued from her husband's business stood in his name. Certainly no one can suggest that H. W. Witcover rescued this property in order to make some money out of it or repay himself for the losses and contributions that he had made. The only reasonable deductions, therefore, seem to be that he had rescued it to help his sister and in his closing days realizing that this property stood in his name and that he had made no provision for her in his will, it would appear to be the natural act of a brother well endowed with worldly goods, who bore a deep and abiding affection for a sister who was less fortunate and whose husband had been unsuccessful in business ventures. And the manner of the gift would seem to be even more natural. Because of the fact that his sister's husband had not shown business acumen, he did not turn the property over to Mr. Lumiansky, nor directly to the wife who might have been induced to venture it in an improvident husband's speculation, but it was conveyed to his brother in whom he had faith and confidence and who has stated unequivocally that the property was conveyed to him to be held for his sister's use and that he is so holding it."

This summary of the evidence discloses an issue of fact in respect to the execution of the deed which has been submitted to the court below and decided in favor of the defendants. In view of the evidence which supports the decision it must be affirmed, for it cannot be said to be clearly erroneous, notwithstanding the conflicting testimony.

The appellants also urge in support of their appeal certain objections to the admissibility of testimony considered by the court in reaching its conclusion, particularly the evidence of the brother and sister of the deceased grantor who were respectively the grantee and beneficiary of the deed and parties defendant to the suit. It is contended that such of their testimony as related to transactions or communications between them and the deceased, relative to the property in question from the time it was taken out of the hands of the brother-in-law until the time that it was transferred by the deceased by the deed in suit, was inadmissible under § 692, Vol. 1 of the South Carolina Code. This statute provides in effect that no party to an action, prosecuted or defended by an executor, and no person who has any interest which may be affected by the event of the action, shall be examined in regard to any transaction or communication between him and the deceased person as a witness against the executor. A similar contention is made in regard to the testimony given on behalf of the defendants by the lawyer who prepared the deed and the witnesses thereto. It is also contended that all evidence given by the grantee or other witnesses in regard to an oral agreement for the acceptance of the conveyance by the grantee in trust for the sister of the grantor should have been rejected because of the provisions of § 9041 of the South Carolina Code that all declarations of trust

of any lands shall be proved by some writing signed by a party enabled to declare a trust or else they shall be utterly void and of no effect.

Evidence along the lines indicated was given at the instance of the plaintiff at a hearing before a special master in discovery proceedings under Rule 26(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. When the case subsequently came on for hearing before the special referee similar evidence was introduced by the defendant. It was agreed at the outset of this hearing with respect to objections to testimony that the grounds of objection should be stated and the testimony taken subject to objection, and that all similar testimony should be subject to the same objection without repetition thereof each time a question should be asked. This course was followed for the most part, but no rulings on the admissibility of the evidence were requested or made either by the special referee or by the District Judge at any stage of the case.

 At the hearing before the judge both parties made use not only of the testimony taken by the special referee, but also of the testimony taken in the discovery proceedings so that, although the latter was not formally introduced, the judge understood that it was before him and caused it to be included in the record on this appeal. This course was taken without any ruling upon objections to admissibility and it follows that we may not consider the objections at this time. All of the testimony having been considered below without rulings upon admissibility, all of it is open for consideration in this court. Grove Laboratories v. Brewer & Co., 1 Cir., 103 F.2d 175; Federal Intermediate Credit Bank v. L'Herisson, 8 Cir., 33 F.2d 841; Gibson v. Luther, 8 Cir., 196 F. 203; Ottumwa Box Car Loader Co. v. Christie Box Car Loader Co., 8 Cir., 215 F. 362. Rule 46 of the Federal Rules of Civil Procedure provides that formal objections to rulings of the court are unnecessary and it is sufficient at the time that the rulings are made to make known to the court the action which the party desires the court to take; but this rule does not dispense with the necessity of rulings by the trial court if the action of the court is to be made the subject of review on appeal.

Affirmed.