134 So.2d 297 (1961)
R.L. BERNARDO & SONS, INC., Appellant,
v.
Earl R. DUNCAN and Panama City, a municipal corporation, Appellees.
No. C-271.
District Court of Appeal of Florida. First District.
September 12, 1961.
Rehearing Denied November 21, 1961.
*298 Davenport, Johnston & Urquhart, Panama City, and Truett & Watkins, Tallahassee, for appellant.
William H. Sapp, Mercer P. Spear; Barron & Hilton, and Earl R. Duncan, Panama City, in pro. per., for appellees.
WIGGINTON, Judge.
This is an appeal from a final decree entered by the Circuit Court of Bay County in a suit brought by Duncan as a citizen and property owner of Panama City. The purpose of the suit was manifold, but it is necessary to discuss only the grounds alleged *299 in the complaint on which relief was granted and which form the subject of this appeal.
The complaint alleges that the city entered into an improvement contract with R.L. Bernardo and Sons, Inc., whereby the latter agreed to construct certain water front improvements for a total contract price of $5,619,000, which contract was later reduced by mutual agreement to the sum of $5,324,000. The complaint alleges that prior to the actual commencement of work the city unlawfully made an advance payment to Bernardo on the contract price of a sum exceeding one-half million dollars. It was prayed by the complaint that this payment be decreed to have been unlawfully made, and that Bernardo be required to reimburse the city in the amount of such unlawful payment. It is from that part of the final decree dealing with this allegedly unlawful payment to Bernardo that this appeal is taken.
In the answers interposed by both Bernardo and the city, it is denied that the advance payment on the contract questioned by the complaint was unlawful or unauthorized, but it is affirmatively asserted that the payment was made strictly in accordance with the provisions of the specifications issued in connection with instructions to bidders pursuant to which the contract was entered into between the defendant parties. The answers of the defendants also raised the issue as to the plaintiff's right to maintain this suit, it being their contention that the complaint failed to allege that the plantiff is a taxpayer of Panama City, and that such status is indispensable to plaintiff's right to maintain the action.
Disposing of the last point mentioned above which formed an issue in the case, the chancellor recognized the law of Florida as originally enunciated in the early development of our jurisprudence which established the principle that a citizen, taxpayer and owner of property has a right to maintain a suit in equity to question the acts of public officials which tend to produce a resultant injury to the plaintiff by increasing the burden of his taxes. The rule generally recognizes the right of a citizen and taxpayer to maintain a suit to prevent the unlawful expenditure by public officials of public monies unless otherwise provided by legislative enactment.[1] The sole question presented by this issue was whether one who qualifies as a citizen and property owner living within a community will be presumed to be a taxpayer of that community within the spirit and intent of the principles announced by the decisions of the Supreme Court without specific allegations or proof regarding the amount and nature of taxes paid by him. The chancellor found from the evidence that the 1957 budget of the City of Panama City was financed to the extent of 30% by excise taxes collected from the citizens of that community, and only 25% from ad valorem taxes assessed against real estate. The chancellor reasoned that when the legal principle was first announced that a complaining party was required to occupy the status of a taxpayer was at a time when government was financed almost wholly by ad valorem taxes, and only a small extent from license taxes, but that in recent years conditions have changed to the point where government, both national, state and local, is financed to a substantial degree from excise taxes levied against all its citizens. The chancellor finally concluded that the admission by the city and Bernardo that plaintiff was a citizen and property owner of Panama City was sufficient to qualify him to maintain the action for it would be assumed that as such a citizen and property owner plaintiff was as a matter of necessity a payer of excise taxes within the community. This issue was resolved in favor of plaintiff, but it is urged on appeal that since such legal theory has not yet found its way into the jurisprudence of this state, an opinion should be written establishing such principle as a matter of law *300 for the future guidance of litigants and trial courts of Florida.
With regard to the remaining issue on appeal the evidence discloses and the chancellor found that the controlling action of the City of Panama City which governed the entire project from its inception to its conclusion, including the authority to issue revenue certificates to finance the project, the authority to prepare plans and specifications and to enter into a contract for the construction of the project, was a resolution adopted by the city on July 18, 1956. Section 2 of the Resolution provides that "the acquisition, construction and equipment of the Municipal Waterfront Improvements, referred to above, be, and the same are hereby authorized in accordance with the provisions of this Resolution and the Trust Agreement to be executed by the City in the form set forth in Section 6 hereof." Section 7 of the Resolution provides: "All of the provisions of the Trust Agreement, when executed, as authorized herein, shall be deemed to be a part of this Resolution as fully and to the same extent as if incorporated herein." Section 402, Article IV, of Section 7 of the Resolution provides: "Payment of the cost of the Municipal Waterfront Improvements shall be made from monies in the construction fund * * * Except as otherwise expressly provided by other provisions of this Trust Agreement, all payments from the Construction fund shall be subject to the provisions and restrictions set forth in this Article, and the City covenants that it will not cause or permit to be paid from the construction fund any sums, except in accordance with such provisions and restrictions."
Section 702, Article VII, Section 7, of the Resolution provides: "The City further covenants that no such contract will provide that payments thereof shall be made by the City in excess of 90% of monthly estimates approved by the consulting engineers of monies due the contractor for work performed or materials furnished during the preceding month, except payment of the final balance due under any such contract."
From the foregoing provisions of the Resolution which form the basis of the city's authority to act in connection with the contemplated improvements the chancellor found that no payment was permitted to be made the contractor from the construction fund in excess of 90% of the monthly estimates approved by the consulting engineers of monies due the contractor for work performed and materials furnished during the preceding month. It was on the basis of this Resolution that plans and specifications were prepared, bids were invited, and Bernardo bid for the contract. The chancellor found from the evidence that after the contract between Bernardo and the city was executed, the specifications pursuant to which the bid was made were amended to add an additional paragraph which reads as follows: "Special first estimate of ten per cent of the total contract price will be paid within ten days after the work order is issued for payment of bond premium, prepaid insurance and move-in cost." The foregoing paragraph is found in Section S-18 of the amended specifications. It was pursuant to this amended provision of the specifications that the city made an advance payment to Bernardo of $534,200. The chancellor found that the act of the city in amending the specifications by authorizing the advance payment to Bernardo of 10% of the contract price was ultra vires, illegal and void and as being contrary to the resolution quoted above. The court further found from the evidence that upon receipt of this advance payment Bernardo paid to the city the sum of $250,000 under some vague and ambiguous supplemental agreement between the parties, which funds were deposited in the bond account and preserved by the city for use in servicing the outstanding revenue certificates. The court further found that from the remainder of the advance payment Bernardo had paid the premium on the performance bond required of him under the contract in the sum of $53,420. Giving Bernardo credit for that portion of the advance payment which he repaid to the city, plus the amount he had paid as premium *301 on his performance bond, there still remained a balance of the advance payment in the sum of $230,780, which the court ordered Bernardo to repay to the city unless he could establish by competent proof that he had made further expenditures from the remaining balance found to be due the city in connection with the performance of the contract for which the city was benefitted. Bernardo was granted the opportunity of filing a supplemental pleading setting forth the amount of expenditures made by him for which he would be entitled credit against the balance of the advance payment, and to offer proof in support of such items of expenditure at the hearing to be later held before the court. Although Bernardo filed such a pleading setting up in itemized form additional expenditures made by him in the performance of the contract, he later withdrew this pleading and declined to offer any evidence in support of any of the items listed therein.
The pleadings reveal, and the court found, that before any work was done by Bernardo under the contract, but after this suit was instituted, the city by agreement with Bernardo cancelled various parts of the contract having a value of $4,735,184, and continued in effect only the remaining portions of the contract for the performance of work having a value of $606,815, of which amount $534,200 had been paid by virtue of the contested advance payment discussed above. The chancellor found that the act of the city in cancelling the major portion of the Bernardo contract had no bearing on the issue of whether the advance payment of over one-half million dollars was illegally made. After cancellation, the remaining part of the Bernardo contract only required him to install parking meters and clean up the area after the project was completed under contracts entered into between the city and other contractors, after which a balance would be due Bernardo of approximately $70,000.
By his final decree the chancellor found that Duncan was qualified as a citizen, property owner and taxpayer of Panama City to maintain this action, and that Bernardo had unlawfully received from the city as an advance payment on the contract the sum of $230,780, for which amount judgment in favor of the city and against Bernardo was entered. It is from that decree that this appeal is taken.
Appellant's first point on appeal questions the correctness of the chancellor's order overruling his motion to dismiss the complaint on the ground that plaintiff Duncan did not allege or prove the necessary status of a taxpayer. Appellant contends such allegation and proof is essential to give the court jurisdiction of this type of action, even though it was admitted he was a citizen and property owner of Panama City. In support of his position that such allegation and proof is jurisdictional appellant cites decisions in which it is generally held that even though the plaintiff is a taxpayer, he cannot maintain a suit in equity to restrain public officials in the performance of authorized contracts or other lawful acts permitted by law on the ground that the action of the public officials is illegal or unauthorized unless he can show that the acts complained of will increase his taxes, otherwise result in direct or indirect pecuniary injury to him, or will increase the public burden.[2] He also cites the Belmont case[3] where the Supreme Court held that an individual who was shown to be a payer of poll taxes within the community did not occupy such a status as a taxpayer as would permit him to intervene or contest a bond validation suit. The court held it must be shown that plaintiff was a taxpayer of the community before he would have such a standing as would permit him to contest the *302 bond issue. Also relied on is the Boyd case[4] in which the Supreme Court held that private individuals, as such, have no standing in a court of equity to sue solely for the protection of the rights of the general public, and that tax suits form no just exception to the rule. Appellant also cites the Pirtle case[5] in which the Second District Court of Appeal affirmed an order dismissing a petition for declaratory decree in which the trial court held there was no proof that the plaintiff would suffer any injury different in kind from that sustained by the public generally, or that the act of the public officials sought to be enjoined would result in any increase in taxes or any special injury to the plaintiff.
Appellee's reply to the authorities cited by appellant is that the revenue certificates involved in this case were required to be liquidated from the income derived from the operation of the project and that if this income was not sufficient the city has pledged its cigarette tax, as well as certain license and franchise taxes, as a supplement to the bond fund. Appellee contends that governmental units today derive only a small portion of their revenue from ad valorem taxes, but derive a much larger percentage from other forms of excise taxes. Appellee supports the reasoning of the chancellor that where it is alleged and proved that the plaintiff is a citizen and property owner of a community, it is established by implication that he is likewise a taxpayer of that community for the reason that all taxpayers are subject to excise taxes levied by the city against its citizens for the support of local government. Appellee admits that this is a new concept in the law, but is realistic and should be declared to be the law of Florida.
The Supreme Court of Florida in a series of decisions has established the principle that a citizen and taxpayer, when suing as such, undoubtedly has the right to injunctive relief to protect the public treasury against illegal disbursements of public funds which it is charged will result from the carrying out of an unauthorized or illegal contract. In such cases no other showing is required of complainant other than he allege his status as a citizen and taxpayer and point out that the threatened disbursement of public funds is for an unauthorized or illegal purpose, whether any actual fraud or misconduct was intended or contemplated thereby or not.[6] If under these authorities a citizen and taxpayer has the right to injunctive relief to restrain the illegal disbursement of public funds, he would likewise have the right to declaratory relief adjudging that a disbursement of public funds already made was illegal and unauthorized, coupled with the right to have such illegal disbursement returned to the public treasury.
Appellant takes the position that a different rule of law should be applied in this case, and urges the principle announced by the Supreme Court in Rickman v. Whitehurst, supra. In that case injunction was sought against the Board of County Commissioners to restrain them from building a county road with hired labor because the statute required that such road be built only pursuant to a contract let under the public bidding statutes. The court recognized the rule that a citizen and taxpayer had the right to maintain a suit to prevent the unlawful expenditure of public monies, but only if he could allege and prove that the unlawful expenditure sought to be enjoined would result in special injury to the plaintiff as a taxpayer in an increased public burden. The special injury to the taxpayer would have to be shown to be distinct from that of every other inhabitant, the difference being in kind and not in degree. The decision states that in the absence of a *303 showing of special injury or an increase in the public burden, suits to enjoin public officials from making illegal expenditures of public funds must be brought by an authorized public officer in the protection of public interest. This rule was subsequently followed by the Supreme Court in the Bryan case[7] which was a suit by a citizen and taxpayer seeking to enjoin the city from holding an election, the injury to the plaintiff allegedly being the expenditure of public funds for the printing of the ballots. The fact was established that before the suit was filed the ballots had already been printed and the expenses incurred, so plaintiff was unable to show any special injury. The principle was also later followed by the Second District Court of Appeal in the Guernsey case.[8] That suit was brought by a citizen and taxpayer to restrain the Board of Control from removing from Sarasota County certain paintings bequeathed to the State of Florida by the Ringling will. The statute required that all such paintings remain in Sarasota County and not be removed therefrom. The court held under the principle above stated that the plaintiffs alleged no special injury to themselves different in kind from that which might be suffered by all other citizens of Sarasota County, and therefore had no standing to question or restrain the acts of the Board of Control in removing the paintings from that county. It is our view that the principle on which appellant relies has no application to the facts in this case, but that the principle which controls is that set forth in the decisions first above mentioned which permits a citizen and taxpayer to restrain public officials from making illegal or unauthorized expenditures of public funds.
We next turn to the question of whether the failure of the complaint to allege that plaintiff was a taxpayer, as well as a citizen and property owner of Panama City, was fatal to the court's jurisdiction. By the order appealed the chancellor found that the complaint failed to allege and the proof failed to show that Duncan was an ad valorem taxpayer of the City of Panama City. The court found from the stipulation of the parties that Duncan was a citizen, as well as a property owner in Panama City, which property he occupied as his home. The chancellor found that it was immaterial whether Duncan paid ad valorem taxes in determining whether he was a taxpayer within the spirit and intent of the law. The court found from the evidence that only a small portion of the city's budget was derived from ad valorem taxes, and that a much larger portion of the budget was derived from the imposition of excise taxes against the citizens of the city. The decree recites that "The pleadings and the testimony in this case reflect that there are various excise and license taxes levied by the City for the maintenance of the City government. What everybody knows the Court is presumed to know and may take judicial notice thereof; therefore, the Court takes judicial notice of the fact that a citizen and property owner, living and residing within the City of Panama City, is necessarily required to pay certain forms of excise taxes for the operation and maintenance of the City government. Therefore, the Court finds that Duncan was a citizen, property owner and a taxpayer within the City of Panama City at the time this suit was filed and had a right to maintain this action."
The decisions heretofore rendered by the appellate courts of this state have required that the plaintiff in a taxpayer's suit allege and prove that he pays ad valorem taxes in order to qualify as a taxpayer within the meaning of the law. The decree appealed presents an intriguing question and is one on which this court would welcome the opportunity of passing. Although the chancellor found from the proof contained in the record before him that plaintiff Duncan had *304 neither alleged nor proved that he was an ad valorem taxpayer, our review of the record leads us to a contrary conclusion. During the course of the proceedings Bernardo took Duncan's deposition. In his deposition Duncan testified that he was a citizen, resident and freeholder of Panama City. He testified that the property owned by him was occupied as his home, the assessed valuation of which exceeded the homestead tax exemption allowed by the Constitution, art. 10, § 7, F.S.A. We fail to find where this evidence was controverted and therefore it must be accepted as true. Since the record affirmatively establishes that the plaintiff was a property owner on which he was required to pay ad valorem taxes levied and assessed by the City of Panama City, it is not necessary for us to decide whether or not the chancellor erred in holding that as an assumed payer of excise taxes plaintiff was qualified to institute and maintain this action.
The second principal point on appeal questions the correctness of the court's finding and decree that the advance payment of over one-half million dollars made by the city to Bernardo was ultra vires and therefore illegal and unauthorized, and in entering judgment against Bernardo in favor of the city for the remaining balance of the advance payment after deducting the amount repaid to the city and the amount of bond premium. Appellant contends that this advance payment was made strictly in accordance with Section S-18 of the specifications. It is appellant's position that even though these specifications were amended after he entered into his contract with the city, the latter possessed lawful authority under its charter, as supplemented by the general law, to make the amendment, so it could not be held ultra vires or illegal. Appellant points out that the basis of the court's ruling is that the Trust Agreement provided the exclusive mode of payment, and since he found that the amended specifications permitting the advance payment were in conflict with the Trust Agreement, the act of the city in purporting to amend the specifications was void. Appellant contends that the Trust Agreement was not actually executed until after specifications were amended and therefore it could have no binding effect on the payment theretofore made to Bernardo.
Appellee urges, however, that the complete form of the Trust Agreement which was later executed by the city was set forth in full in the Resolution adopted by the city as a basis for the issuance of the revenue certificates and the execution of the contract with Bernardo. Appellee contends that the terms and provisions of the Trust Agreement were therefore binding on both the city and Bernardo, and the fact that the Trust Agreement was not executed until later has no bearing upon the illegality of the city's act in attempting to later amend the specifications so as to authorize the advance payment contrary to the terms of the Trust Agreement. Appellee asserts that since public funds were involved the city could not under its general charter authority subsequently enter into an agreement with Bernardo, the effect of which was to amend the specifications and authorize the advance payment contrary to the method of payment set up in the Trust Agreement.
In reply appellant contends that appellee Duncan has no legal status to question the legality of the city's act in amending the specifications even though it may be contrary to the Trust Agreement for the reason that the provisions of both the bond resolution and Trust Agreement specifically limit any right created by reason of of the Trust Agreement or Resolution to holders of the bonds or certificates, the city and the trustee for the bondholders. This section provides: "Nothing in this Trust Agreement, express or implied, is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto and the holders of the bonds and the coupons thereunto appertaining any right, limit or claim, legal or equitable, under or by reason of this trust agreement or any provision hereof. This Trust Agreement *305 and all its provisions being intended to be and being for the sole and exclusive benefit of the parties hereto and the holders from time to time of the bonds and such coupons." Appellant contends that since the court found no evidence of fraud between the city and Bernardo, it was not justified in finding that a technical violation of the Trust Agreement provisions relative to payment were void, or to use such violation as a basis for the judgment entered. Appellant insists this is true particularly in view of the fact that Duncan failed to prove that there has been or will be some material damage to the taxpayer or other class of persons to which he belongs because of such technical violation.
After the Resolution calling for the installation of this public improvement was adopted by the city, a proceeding to validate the revenue certificates was instituted in the Circuit Court of Bay County. From a decree refusing to validate the certificates the city appealed. In reversing the decree of dismissal and directing that a decree of validation be entered, the Supreme Court reviewed the entire plan as embodied in the resolution and trust agreement, and in its opinion made the following statement: "We want to particularly emphasize that there is no pledge of the ad valorem taxing power in this case nor can there be any lien against the project itself. This is assured by the provisions of the bond resolution and trust indenture and constitutes the very foundation for our holding that these bonds will constitute, when issued, valid obligations of the City of Panama City to the extent and only to the extent authorized by the aforesaid resolution and trust indenture."[9] It therefore appears that the legal foundation for the entire improvement program, as well as the validity of the revenue certificates themselves, was the resolution embodying the trust agreement later to be executed, which contained restrictions on the method of paying to the contractor money to which he would become entitled, and limiting such payments to 90% of the materials furnished and labor performed during the preceding month. The Resolution and Trust Agreement had received judicial sanction and approval, and it was only on the basis of these documents that the revenue certificates were held to be valid and the improvement program approved. As a result of the Supreme Court's opinion and the subsequent decree of validation entered by the trial court, the terms and provisions of the Resolution and Trust Agreement became binding on the city, as well as on the citizens, taxpayers and revenue certificate holders, It is our view that the chancellor was correct in holding that the city's action subsequent to the execution of the contract by which it amended the specifications and permitted a 10% lump sum advance payment to be made to the contractor before any work on the project had commenced was unauthorized and illegal and constituted a departure from the plan which had been submitted to and approved by the court on the basis of which the issuance of the certificates was approved.[10] No authority has been cited by appellant to demonstrate that under these circumstances the city may, under its general corporate powers, vary the terms of a resolution on the basis of which revenue certificates have been judicially validated, if such variance constitutes a radical departure from the approved plan.
Having found that the advance payment to Bernardo constituted an illegal and unauthorized act, the Court was well within the exercise of his discretion in requiring that such payment be returned to the city, less any credits to which Bernardo could show himself legally entitled. The chancellor credited against this payment the amount Bernardo repaid to the city, in addition to the amount expended by Bernardo *306 in the payment of his performance bond premium. The Court gave Bernardo every opportunity to allege and prove other expenditures made by him in the performance of the contract for which the city derived a benefit which would have likewise been credited against the advance payment. Bernardo failed or refused to avail himself of this opportunity, so it must be assumed that the city received no benefit under the contract from the remainder of the advance payment. The court's action in this regard is in conformity with the principle approved by our Supreme Court in the Lainhart case.[11] It was there held that if one supplied goods to a public body under an illegal contract, the amount agreed to be paid for the goods under the contract would not be recognized, but that if the goods were delivered to and received by the public body which benefitted from them, the person supplying the goods under the illegal contract would nevertheless be entitled to recover from the public body the reasonable value of the goods, exclusive of any profit to be realized from the transaction. In this case the chancellor gave Bernardo the opportunity of proving the reasonable value of any expenditures made by him under the contract which benefitted the city, and gave him credit for all expenditures so established. It is our conclusion that the chancellor did not err in awarding the city a judgment against Bernardo for the remainder of the illegal advance payment made to him.
Appellant raises other points on appeal, but a review of the briefs and the record fails to reveal that they have any substantial merit. The decree appealed is accordingly affirmed.
Affirmed.
STURGIS, J., and FITZPATRICK, W.L., Associate Judge, concur.

On Rehearing
WIGGINTON, Judge.
In the opinion rendered by this court it is recited that during the course of the proceedings Bernardo took Duncan's deposition in which the latter testified that he was a citizen, resident and freeholder of Panama City, the property owned by him being his homestead on which the assessed valuation exceeded the amount of tax exemption allowed by the Constitution. Our opinion recites that we failed to find where this evidence was contraverted, and by accepting it as true, the record affirmatively reflects that Duncan was an ad valorem taxpayer of the City of Panama City and therefore entitled to maintain this action.
By its petition for rehearing Bernardo questions the propriety of this court's action in basing its opinion upon the testimony given by Duncan in the deposition mentioned above. Although appellant does not question the fact that Duncan's sworn deposition affirmatively establishes the fact that he is an ad valorem taxpayer of Panama City, appellant contends that this deposition was never introduced in evidence during the course of the trial before the chancellor, and therefore the facts established therein could not have been properly considered by the chancellor in the rendition of his decree, and likewise cannot properly be considered by this court in arriving at its decision on the merits of the appeal.
We recognize and affirm the established rule of law that a deposition is not a part of the evidence before the court unless made so pursuant to the rules of evidence and the rules of court.[1] The customary method of making a deposition a part of the record in a cause is to introduce it in evidence during the trial. Since the testimony taken by the chancellor in this case *307 was not reported and therefore is not contained in the record on appeal, we are not in position to question the assertion by appellant that the Duncan deposition was not introduced in evidence at the trial.
The reason for the rule that a deposition may not be considered as evidence in a cause unless properly made so is to bring the facts established by the deposition before the trier of the facts so that they may be considered, along with other evidence, in reaching a decision, and to give the opposing party an opportunity to make objection thereto. This rule is particularly applicable to actions at law tried by a jury. Unless depositions filed in the cause are introduced in evidence, the jury will have no opportunity to consider the testimony contained in the depositions and, of course, could not base its verdict on facts established by such testimony.
The case we now review is one in chancery in which the chancellor is not only the judge of the law but also the trier of the facts involved in the controversy. The record reveals that in its answer filed to the complaint Bernardo alleged that Duncan was not a taxpayer of the City of Panama City and therefore was not entitled to maintain this suit. It therefore cannot be questioned but that Duncan's status as a taxpayer was one of the paramount issues in the cause. Bernardo also filed a counterclaim against Duncan to which a reply was made. It was after the pleadings were settled that Bernardo took Duncan's deposition in which Duncan established without contradiction that he was an ad valorem taxpayer for the City of Panama City. Before the cause came on for hearing before the chancellor for the taking of testimony, Duncan moved for a summary final decree on Bernardo's counterclaim, the motion being grounded upon the contention that based upon the pleadings and depositions theretofore given by Bernardo and Duncan there existed no genuine issue of a material fact, and that Duncan was entitled to a decree as a matter of law. Under the rule applicable to motions for summary decree a mandatory duty devolved upon the chancellor to consider the facts sworn to in the depositions given by both Duncan and Bernardo in determining whether or not there existed a genuine issue of fact which would preclude the entry of a summary decree in favor of the moving party.[2] Duncan's motion for a summary decree was fully heard by the court at the conclusion of which the chancellor announced his intention to grant the motion and enter a decree in favor of Duncan on Bernardo's counterclaim. By this announcement it is conclusively presumed that in considering the issue of Duncan's right as a taxpayer to maintain the action as a predicate for his entitlement to a summary decree on Bernardo's counterclaim, the court considered Duncan's deposition, including that portion by which he established that he was an ad valorem taxpayer of the City of Panama City. For the purpose of this motion Duncan's testimony, as reflected by his deposition, was evidence in the case before the chancellor and considered by him in reaching his conclusion. Upon the chancellor's announcement that he would grant Duncan's motion for summary decree, Bernardo moved for and procured an order of nonsuit on the counterclaim which obviated the necessity of entering a formal order or decree pursuant to Duncan's motion.
The record further reveals that after the first stage of this case was tried before the chancellor, a preliminary decree was entered which permitted Bernardo to file a supplemental pleading setting forth in itemized form a statement of the expenses incurred by him in the partial performance of his contract with the city, and in which it is recited that a subsequent hearing would be held before the court for the purpose of taking testimony on the issues made by such supplemental pleading. Before final hearing or the taking of further testimony Duncan *308 again moved for a summary final decree on the contention that from the pleadings, depositions on file in the cause, and the testimony thus far adduced before the court, there existed no genuine issue of material fact, and that he was entitled to a favorable decree as a matter of law. This motion was heard by the court at a hearing duly scheduled thereon, at which time it must be presumed that the court considered all issues made by the pleadings filed in the cause, as well as the proof adduced on behalf of the contending parties as contained in the depositions then on file and the testimony taken at the prior hearing. This proceeding again brought to the court's attention Duncan's original deposition containing undisputed evidence as to his status as an ad valorem taxpayer, which testimony stood unrefuted in the record. This motion was denied and the case proceeded to final hearing which resulted in the decree from which this appeal is taken.
From the foregoing it affirmatively appears that even though Duncan's deposition was not formally introduced in evidence at the time testimony was taken before the chancellor, such deposition was before the court and accepted both by the chancellor and the parties to the cause as evidence of Duncan's status as a taxpayer on two separate occasions prior to the entry of final decree. The record fails to reveal any objection made by Bernardo as to the admissibility of Duncan's sworn testimony contained in his deposition. We are of the view that the chancellor, as the trier of fact, was lawfully authorized under the circumstances to consider Duncan's deposition testimony with respect to his status as an ad valorem taxpayer in arriving at his final decision in the case. The chancellor being so authorized, then by the same token this court may with propriety consider the Duncan deposition in determining whether the decree appealed is free from error.
A case somewhat analogous to the question here considered is that of Pfau et al v. Witcover et al, decided by the Fourth Circuit Court of Appeals.[3] This was a case in chancery brought for the purpose of cancelling a deed to real property. The plaintiff's deposition was taken by defendant under Rule 26(c), Federal Rules of Civil Procedure, 28 U.S.C.A., the counterpart of which is the rule in effect in Florida under which Duncan's deposition was taken. Although that deposition was not formally introduced in evidence, it was brought to the court's attention on final hearing and was considered by him in reaching his decision and in the rendition of the final decree. No objection to the testimony contained in the questioned deposition was made by defendant at any state of the proceeding. The Circuit Court of Appeals held that since the testimony contained in the disputed deposition had been considered by the trial court without any ruling upon its admissibility, the deposition was open for consideration by the Circuit Court of Appeals in passing upon the correctness of the chancellor's decree. This, despite the fact that the deposition was never formally introduced in evidence in the trial court. Although a factual distinction exists between Pfau and the case we now review, the situation is sufficiently analogous as to make the principle followed in that case applicable to the one here considered.
We have considered the remaining points made by appellant's petition for rehearing, but find them to be without substantial merit. The petition is accordingly denied.
STURGIS, J., and FITZPATRICK, W.L., Associate Judge, concur.
NOTES
[1] Rickman v. Whitehurst et al., 73 Fla. 152, 74 So. 205.
[2] Guernsey et al. v. Haley et al., Fla.App. 1958, 107 So.2d 184; Bryan v. City of Miami, Fla. 1951, 56 So.2d 924; Rickman v. Whitehurst, supra note 1.
[3] Belmont v. Town of Gulfport, 97 Fla. 688, 122 So. 10.
[4] City of DeLand v. Boyd et ux., 109 Fla. 328, 147 So. 575.
[5] Pirtle v. City of Titusville, Fla.App. 1958, 101 So.2d 397.
[6] See Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14, 69 A.L.R. 689; Wester v. Belote, 103 Fla. 976, 138 So. 721; City of Daytona Beach v. News-Journal Corp., 116 Fla. 706, 156 So. 887.
[7] Bryan v. City of Miami, Fla. 1951, 56 So.2d 924.
[8] Guernsey v. Haley, Fla.App. 1958, 107 So.2d 184.
[9] Panama City et al. v. State of Florida, Fla. 1957, 93 So.2d 608, 614.
[10] State of Florida, et al. v. City of Miami, Fla. 1954, 76 So.2d 294; Whitner et al. v. Woodruff et al., 68 Fla. 465, 67 So. 110.
[11] Lainhart et al. v. Burr, 49 Fla. 315, 38 So. 711.
[1] Parker v. Parker, Fla.App. 1959, 109 So.2d 893; Myers v. Roberts, 35 Fla. 255, 17 So. 358.
[2] Rule 1.36(c), F.R.C.P., 30 F.S.A.
[3] Pfau et al. v. Witcover et al. (C.C.A.4th) 139 F.2d 588.